UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTHONY MARTINEZ,
  *Plaintiffs*,

v.                                          No. 3:20-cv-00231 (JAM)

PAYNE *et al.*,
  *Defendants*.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Anthony Martinez is a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC"). He filed this lawsuit *pro se* and *in forma pauperis* against numerous DOC officials, principally challenging his designation as a Security Risk Group ("SRG") member and his placement in restrictive housing. Defendants move for summary judgment on Martinez's procedural due process, deliberate indifference, and injunctive relief claims, primarily on the ground that Martinez failed to timely exhaust his administrative remedies. For the reasons set forth below, I will grant the motion.

### BACKGROUND

Martinez filed this action against seven defendants, Correctional Officer Payne; Lieutenant J. Russell; Director of Security Antonio Santiago; Hearing Officer King; District Administrator Scott Erfe; Warden Mulligan; and SRG Coordinator John Aldi.[1] Martinez alleges that these defendants violated his rights in late 2018 while he was a pre-trial detainee at the New Haven Correctional Center ("New Haven").[2]

On December 12, 2018, Martinez was designated to the SRG program.[3] On December 21, 2018, Martinez was transferred to the "Phase 2 ticket group" at Walker Correctional

---

[1] Doc. #1 at 1-4.
[2] *Id.* at 6, 16 (¶¶ 2, 81).
[3] Doc. #29-12 at 2.

1

Institution ("Walker").[4]

I issued an initial review order that dismissed some of Martinez's claims and allowed others to proceed. *See Martinez v. Payne*, 2020 WL 3630422 (D. Conn. 2020). I allowed Martinez's procedural due process claim to proceed against defendants Russell, Payne, and King, his deliberate indifference claim to proceed against Russell, and his injunctive relief claim to proceed against defendants Aldi, Santiago, and Erfe. *Id.* at *7.

Defendants now move for summary judgment on four grounds: (1) that Martinez failed to exhaust his administrative remedies; (2) that Martinez was provided all the process that was due regarding his SRG hearing and designation and that defendant King was not involved in that process; (3) that defendant Russell was not deliberately indifferent to Martinez's health and safety; and (4) that defendants Aldi and Erfe do not have the authority to provide the requested injunctive relief as they are no longer employed by the DOC.[5] Martinez opposes the motion.[6]

## DISCUSSION

The principles governing my review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proven at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to

---

[4] Doc. #1 at 10 (¶ 38).
[5] Doc. #29-1 at 5-15.
[6] Doc. #35.

warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).

Because Martinez is a *pro se* party, his pleadings and submissions on summary judgment must be given a liberal construction. "The policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156-57 (2d Cir. 2017) (*per curiam*).[7]

The Court's local rules ensure that a *pro se* party is thoroughly advised of the procedural requirements for opposing a summary judgment motion, *see* D. Conn. L. Civ. R. 56(b), and the defendants here have complied with the rule's requirement to serve on Martinez a notice detailing the rules that govern a motion for summary judgment.[8] A party's *pro se* status does not relieve the party of the obligation to respond to a motion for summary judgment and to support the party's claims with evidence as the rules require. *See Nguedi v. Fed. Reserve Bank of New York*, 813 F. App'x 616, 618 (2d Cir. 2020).

### *Exhaustion of administrative remedies*

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), states that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

---

[7] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[8] Doc. #29-3.

3

wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies must occur regardless of whether the remedies can provide the relief that the prisoner seeks. *See Booth v. Churner*, 532 U.S. 731, 740-41 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).

Importantly, a prisoner is required to exhaust only those administrative remedies that are "available." 42 U.S.C. § 1997e(a); *see Ross v. Blake*, 136 S. Ct 1850, 1858 (2016). An administrative remedy is unavailable under three circumstances: (1) if it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) if the administrative scheme is so opaque that it becomes incapable of use by the "ordinary prisoner," who cannot "discern or navigate it" or "make sense of what it demands"; or (3) if prisoner administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

The DOC's grievance procedure for general matters is set forth in Administrative Directive ("AD") 9.6.[9] *See Riles v. Buchanan*, 656 F. App'x 577, 579-80 (2d Cir. 2016) (describing requirements of AD 9.6). It requires that prisoners first pursue informal resolution, although for general grievances, prisoners "may" pursue verbal resolution but, if that fails, "shall" submit an Inmate Request Form. AD 9.6(6)(A). A prison official must respond to the written request within 15 business days. *Ibid.*

If the response is unsatisfactory or if there is no response, the second stage of the AD 9.6

---

[9] Defendants filed a copy of the version of AD 9.6 that was in effect at the time of the events alleged in Martinez's complaint. *See* Doc. #29-9. Because AD 9.6 has since been updated, *see* Connecticut State Department of Correction, Administrative Directive Chapter 9.6 Inmate Administrative Remedies, *available at* https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf (last accessed August 6, 2021) (noting that it supersedes the version dated August 15, 2013), I will cite to the version of AD 9.6 that defendants attached as an exhibit.

4

procedure is for prisoners to file a formal Level 1 grievance on an Inmate Administrative Remedy Form within 30 calendar days of the incident that gave rise to the grievance. AD 9.6(6)(C). An official must respond within 30 business days of receipt of the Level 1 grievance. AD 9.6(6)(I).

The third stage is the filing of a Level 2 grievance on an Inmate Grievance Appeal Form, CN 9604, to the District Administrator within 5 calendar days of receiving the unsatisfactory disposition or after no response. AD 9.6(6)(D), (I), and (K). An official must respond within 30 business days of receipt of the Level 2 grievance. AD 9.6(6)(K). Under certain circumstances, a prisoner may within 5 calendar days of receipt of that disposition file a Level 3 grievance. AD 9.6(6)(L).

AD 9.6 also provides specific procedures for appealing SRG designations. To file an appeal, a prisoner must complete a CN 9602, Inmate Administrative Remedy Form. AD 9.6(9). This form must be completed and submitted within 15 calendar days of the receipt of the decision being appealed. Upon receiving an appeal of a designation to SRG, the appropriate District Administrator shall respond "in writing within 15 business days of receipt of the appeal." *Ibid.* Such decision shall not be subject to further appeal. *Ibid.*

The New Haven facility's inmate handbook describes three types of administrative remedies for prisoners: grievances, appeals of discretionary decisions, and property claims, and it notes that the procedures for each type of remedy are set out in AD 9.6.[10] According to the inmate handbook, prisoners may obtain a copy of AD 9.6 from the library.[11] The inmate handbook also states that discretionary decisions include SRG designations, and it directs prisoners to use the Inmate Administrative Remedy Form CN 9602 to file an appeal of such a

---

[10] Doc. #29-16 at 14.
[11] *Ibid.*

decision.[12] It then states, "Filing for an administrative remedy **must be made within fifteen (15) calendar days** of the action taken, or discovery of the problem."[13] This section of the inmate handbook concludes by stating that the DOC's Administrative Remedies Process "is fully set out in [AD] 9.6, Inmate Administrative Remedies," and directs prisoners to "make yourself familiar with its provisions and refer to it for specific information pertaining to an issue you may have, and how to address it. This summary is intended for information only and, of itself, establishes no procedures or standards."[14]

  1. *Procedural due process claim exhaustion*

I will first consider whether Martinez properly and timely exhausted his procedural due process claim relating to his SRG designation. Martinez appears to have submitted multiple appeals of his SRG designation. The first appeal was submitted on May 23, 2019.[15] In it, Martinez describes the circumstances of his SRG designation in late 2018, writing:

> I was NEVER notified about the appeal process or that I was even able to do so until today[.] I was never given a ticket or able to plea[d] guilty or not guilty[,] I was just designated. Without the chance to fight it that's a failure of due process. Also I am a pre-trial unsentenced detainee and it is ILLEGAL to have me housed with sentenced inmates as well as be obligated to fulfill & finish a punitive program designed for sentenced inmates. Due to these facts I want my SRG affiliation overturned (I want to be sent back to General Population).[16]

Martinez submitted another appeal about two months later on July 24, 2019.[17] In that appeal, Martinez wrote, "Whether I filed in the appropriate time or not, I am a pretr[ia]l-unsentenced detaine[e] & it is ILLEGAL to A) house me with sentenced inmates & B) obligate me to do a program, esp[ecially] a punitive program such as SRG."[18] Martinez also

---

[12] *Ibid.*
[13] *Ibid.* (emphasis in original).
[14] *Id.* at 15.
[15] Doc. #29-15 at 5.
[16] *Id.* at 6.
[17] *Id.* at 2.
[18] *Ibid.* (emphasis in original).

6

acknowledged that appeals of SRG designations must be filed within 15 calendar days of the decision, but asserted that he did not "discover that it was ILLEGAL to have me in this program until 5/23/19 when I filed the appeal."[19] Martinez attached a letter from defendant Erfe acknowledging the receipt of an appeal received by the DOC on May 29, 2019 and denying the appeal because it was not submitted within 15 calendar days of the notice of SRG designation on December 12, 2018.[20]

Defendants argue that Martinez's grievance in May 2019 was untimely because it was not filed within 15 calendar days of his SRG designation in December 2018.[21] Defendants also argue that Martinez was aware of the appeal procedure because he signed a form acknowledging receipt of New Haven's inmate handbook upon his arrival that describes the procedure.[22] Indeed, Martinez did sign such a form on November 30, 2018, acknowledging that he had also attended an "Administrative Remedies Procedure Presentation."[23]

Martinez points to the inmate handbook page describing administrative remedies, and he emphasizes the statement that says that appeals must be filed within 15 calendar days "of the action taken or discovery of the problem."[24] Martinez notes that in his appeals of his SRG designation, he explained that he was never informed of the appeal process until May 23, 2019, the same date he filed his first appeal.[25] Martinez does not dispute, however, that he received the inmate handbook or that he signed the form acknowledging receipt of the inmate handbook and his attendance at the presentation on the administrative remedies procedure.

Martinez does not identify any other reasons for why he did not file a timely appeal (apart

---

[19] *Ibid.* (emphasis in original).
[20] *Id.* at 4.
[21] Doc. #29-1 at 6.
[22] *Ibid.*; *see also* Doc. #29-16 (the handbook).
[23] Doc. #29-17 at 2.
[24] Doc. #35 at 31 (emphasis in original).
[25] *Ibid.*

from his claim to not have known he could until May 23, 2019). Nor does he advance any other argument to suggest that the grievance procedures were unavailable to him.[26]

The "discovery of the problem" language in the inmate handbook does not appear in AD 9.6 itself, though similar language—"discovery of the cause of the grievance"—does appear in the section of AD 9.6 instructing inmates how to file general grievances. AD 9.6(6)(C). The section of AD 9.6 that instructs inmates on how to appeal SRG member designations, however, states that such designations must be filed "within 15 calendar days of the notice of designation" and does not include any such "discovery of the problem" language. AD 9.6(9). The handbook also specifically directs inmates to AD 9.6 and notes that the handbook "itself, establishes no procedures or standards."[27] Martinez's signed acknowledgment of receipt of the inmate handbook and his attendance at the presentation came less than two weeks before his SRG hearing and designation. While Martinez underlines the "discovery of the problem" language, his main argument appears to be that he did not know how to appeal his SRG designation until May 2019, not that he was unaware of the alleged due process problems with his SRG designation themselves. Indeed, even if the "discovery of the cause of the grievance" language applied to appeals of SRG designations, Martinez would have discovered the cause—that his due process rights were allegedly violated—at the same time the SRG designation occurred in December 2018.

In any case, even if Martinez was not given the handbook and even if I accept that he did not know of the procedure to appeal his SRG designation, courts in this circuit have found in light of the Supreme Court's decision in *Ross* that grievance procedures are not "unavailable" simply because a plaintiff was unaware of the existence of the procedure. *See, e.g., Caldwell v.*

---

[26] *Id.* at 30-32.
[27] Doc. #29-16 at 15.

*C.O. Kusminsky*, 2020 WL 6162524, at *5 (N.D.N.Y. 2020) (acknowledging that while the Second Circuit "has not specifically foreclosed 'unawareness' as a basis for unavailability, the majority of district court cases have rejected this theory based on other facts in the record" and collecting cases); *Vidro v. Erfe*, 2019 WL 4738896, at *8 (D. Conn. 2019) ("Post-*Ross*, a plaintiff must show more than a mere unawareness of an existing grievance procedure; he must show that he was unaware because, for example, prison officials threatened him for use of the grievance system or affirmatively misrepresented the process."); *Galberth v. Washington*, 2017 WL 3278921, at *11 (S.D.N.Y. 2017) (noting that post-*Ross* a plaintiff must show he was unaware "*because*, for example, officers were unable or unwilling to make him aware, or prevented him from becoming aware 'through machination, misrepresentation, or intimidation'"); *Briscoe v. D'Agata*, 2016 WL 3582121, at *7 (S.D.N.Y. 2016) (collecting cases); *see also Rucker v. Fletcher*, 2020 WL 1703240, at *3 (W.D.N.Y. 2020) (finding that plaintiff failed to exhaust without a *Ross* exception where plaintiff stated that he did not timely file a grievance because he "did not know he had to and because he was too sick and weak"), *rev. on other grounds*, *Rucker v. Giffen*, 997 F.3d 88 (2d Cir. 2021) (reversing district court's exhaustion finding and holding that administrative remedies are unavailable when the failure to timely file for remedy results from a medical condition and the administrative system does not allow a reasonable opportunity to file for relief, but not addressing the plaintiff's claim that he did not know he had to file a grievance in order to exhaust his claims).

      The facts here are similar to those in *Briscoe*, where the plaintiff similarly acknowledged in writing receipt of a copy of the jail regulations that outlined the grievance procedures and failed to put forth sufficient facts demonstrating that the administrative remedies were unavailable, leading the district court to conclude that the plaintiff failed to exhaust his

administrative remedies. *See* 2016 WL 3582121, at *7. And even prior to *Ross*, courts have noted that receipt of a handbook outlining grievance procedures "generally indicates that the inmates were informed of the grievance procedure so as to make that procedure 'available' to them." *Smith v. City of New York*, 2013 WL 5434144, at *10 (S.D.N.Y. 2013) (applying the pre-*Ross* "special circumstances" standard while noting that receipt of a handbook is not alone dispositive of the issue of exhaustion); *see also Briscoe*, 2016 WL 3582121, at *7 (collecting pre-*Ross* cases).

I find that Martinez failed to exhaust his procedural due process claim by failing to file a timely appeal of his SRG designation within 15 calendar days of the date of the designation. Accordingly, I will grant defendants' summary judgment motion as to Martinez's procedural due process claim.

### 2. *Deliberate indifference claim exhaustion*

The basis of Martinez's deliberate indifference claim against defendant Russell is that Russell refused to place Martinez in protective custody or to transfer him to a different cell or unit after Martinez notified Russell that his cellmate was making death threats against Martinez. While defendants argue that Martinez did not even pursue informal resolution—which can be conducted verbally—Martinez pleaded that he reported the threats to Russell and requested to be moved into protective custody on at least two occasions.

But even if he did pursue informal resolution with Russell, AD 9.6 still required Martinez to submit an Inmate Request Form complaining of the issue. Counselor Supervisor Kimberly Casey, who oversees the grievance coordinators at New Haven, attests in her declaration that, based on her review of New Haven's administrative remedies records, Martinez did not file any

grievances while housed at New Haven between December 12 and December 27, 2018.[28] In addition, Jessica Bennett, the administrative remedies coordinator at Walker, attests in her declaration that, based on her review of Walker's administrative remedies records, Martinez filed only one administrative remedy while housed at Walker, the aforementioned appeal on May 23, 2019 of his SRG designation.[29] Bennett further attests that she did not find any grievances filed by Martinez related to Russell or to Martinez's request to enter protective custody.[30]

In his opposition, Martinez does not appear to contest whether he properly and timely exhausted his deliberate indifference claim; nor does he submit any evidence that he pursued the grievance or remedy process for this claim before initiating this suit. While Martinez did appear to claim at oral argument that he had handed a grievance to another inmate to submit to the DOC, it was Martinez's responsibility to ensure that any such grievance was actually submitted and, in any case, Martinez's offhanded assertion, without more, does not create a genuine dispute of material fact. *See Johnson v. Conley*, 2018 WL 4224076, at \*5 (D. Conn. 2018) (noting evidence that "casts doubt on whether these grievances were ever filed"); *Chambers v. Johnpierre*, 2016 WL 5745083, at \*7 (D. Conn. 2016) (noting that "unsupported statements that [the plaintiff] filed grievances . . . do not create an issue of fact with regard to the exhaustion of his claims."). Martinez also does not give any reason that is allowable under *Ross* for why these remedies were unavailable to him. Accordingly, Martinez's failure to properly and timely exhaust this issue precludes his claim, and I will grant defendants' motion for summary judgment as to Martinez's deliberate indifference claim.

---

[28] Doc. #29-13 at 3 (¶¶ 11-13).
[29] Doc. #29-14 at 3 (¶¶ 11-12).
[30] *Id.* at 4 (¶ 13).

*Injunctive relief*

In my initial review order, I allowed Martinez's claim for injunctive relief to go forward against defendants Aldi, Santiago, and Erfe in their official capacities. *Martinez*, 2020 WL 3630422, at *6. But because I have now determined that Martinez did not timely exhaust his claims against any of the defendants, I will dismiss his injunctive relief claims for the same reason.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (Doc. #29) is GRANTED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 7th day of August 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge